**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | Case No.  16-MJ-5053-KGS |
| ) | |
| MARCO ANTONIO CORTES-GOMEZ,  ) | |
| ) | |
| Defendant.  ) | |
| _____ ) | |

## CRIMINAL COMPLAINT

I, Christopher Kline, being duly sworn, declare and state the following is true and correct to the best of my knowledge and belief.

### COUNT 1

#### CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE

#### AND DISTRIBUTE A CONTROLLED SUBSTANCE

From a date unknown, but before the 1st day of January, 2013, and continuing to on or about the 18th day of December, 2015, in the District of Kansas and elsewhere, the defendant,

**MARCO ANTONIO CORTES-GOMEZ,**

knowingly and intentionally combined, conspired, confederated, and agreed together with Juanita Patricia Garcia, Brenda Louise Sanders, Robert Victor Worthington, James Howard Ross, T.M., and with other persons known and unknown to the Grand Jury to possess with the intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

With respect to defendant Marco Antonio Cortes-Gomez, the amount in the conspiracy

attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine in violation of Title 21, United States Code, Section 841(b)(1)(A). All in violation of Title 21, United States Code, Section 846 with reference to Title 18, United States Code, Section 2.

## COUNT 2

### ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE

On or about the 17th day of December, 2015, in the District of Kansas, the defendant,

**MARCO ANTONIO CORTES-GOMEZ,**

knowingly and intentionally attempted to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846 with reference to Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2.

## BACKGROUND

1. I am a special agent with the Drug Enforcement Administration (DEA), assigned to the Topeka, Kansas Post of Duty (TPOD). I have been so employed since December, 2008. Prior to being employed with the DEA, I was a police officer in St. Louis (University City), Missouri, and while employed as a police officer was assigned to an undercover narcotics unit for approximately eight years.

2. While with the DEA, I have participated in numerous drug investigations, involving the unlawful manufacture of methamphetamine, possession with intent to distribute, distribution of

controlled substances (including cocaine, marijuana, and methamphetamine), as well as the investigations activity directed at monetary transactions involving the proceeds of specified unlawful activities and conspiracies, associated with criminal drug trafficking offenses, in violation of Title 21, United States Code, §841(a)(1), Transportation and Distribution of Controlled Substances; §843(b), Unlawful Use of a Communication Device to Commit and Facilitate the Commission of Drug Trafficking Offenses; §846, Conspiracy and Attempt to Possess with Intent to Distribute and Distribution of Controlled Substances; §§952 and 960, Importation of Controlled Substances; and §963, Conspiracy and Attempt to Import Controlled Substances. My training and experience has involved physical surveillance, execution of search warrants, arrest of numerous drug traffickers and the handling of cooperating sources and sources of information. On numerous occasions, I have spoken with suspects, defendants and narcotics investigators concerning the methods and practices of drug traffickers. Through these investigations, my training, experience, conversations with experienced agents, other drug investigators, and law enforcement personnel, in the United States and elsewhere, I have become familiar with the methods employed by drug trafficking organization, to smuggle, safeguard, and distribute drugs, and to collect and launder drug-related proceeds.  I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

## **PROBABLE CAUSE**

The following facts were made known to me by personal observation or from information which I received from other law enforcement officers and their reports, and/or from other individuals:

1. On 12-17-2015, SA Chris Kline was contacted by TFO Doug Rule (Kansas Highway Patrol) regarding a possible controlled delivery in Topeka, KS.

2. In reference to Kansas Highway Patrol (KHP) incident report 2015017649, Technical Trooper (TT) Brandon McMillan (KHP) conducted a traffic stop of a subject later identified as Rodolfo AHUMEDA.  A summation of the vehicle stop and subject encounter resulted in AHUMEDA admitting he was transporting drugs to an unknown recipient in Topeka, Kansas.  TFO Rule arrived to assist TT McMillan with the investigation as it progressed.

3. Continuing with TT McMillan's report, AHUMEDA admitted that a spare tire secured under AHUMEDA's truck contained the drugs.  TFO Rule and TT McMillan retrieved said tire, and opened said tire to locate 5 bundles of an unknown substance wrapped in plastic and black tape.  TT McMillan opened one of the five suspect packages, which field-tested positive for the presence of methamphetamine.

4. AHUMEDA was not in contact with anyone in Topeka, Kansas, but was in contact with an unidentified subject with the moniker of "Junior" utilizing telephone 52-636-698-7507 and a load coordinator not identified, but utilizing telephone 562-386-9483.

5. AHUMEDA agreed with TFO Rule to assist with a controlled delivery of the purported methamphetamine to Topeka, KS. TFO Rule placed AHUMEDA in the passenger seat of his patrol car and began driving toward Topeka, KS, in anticipation AHUMEDA would receive a contact number or name of a recipient in Topeka, Kansas.

6. While TFO Rule and AHUMEDA were traveling to Topeka, KS, AHUMEDA was given access to his personal cellular telephone to receive telephone calls. When telephone calls were received by AHUMEDA, TFO Rule would record the conversation between AHUMEDA and the person calling AHUMEDA.

7. AHUMEDA received a text message with the telephone number "913-267-0882 Don Tonio".

8. AHUMEDA contacted 913-267-0882 and spoke with a subject who identified himself as "Don Tonio" and "Don Tonio" instructed AHUMEDA to meet with him at the McDonald's on California in Topeka, KS.

9. TFO Rule relayed this information to SA Kline, and asked that TFO Rule, AHUMEDA, and other involved investigators convene at the Topeka Police Department.

10. Once at the Topeka Police Department, SA Kline outfitted AHUMEDA with a covert listening and recording device. SA Kline also instructed AHUMEDA to change the meeting location to the Wal-Mart located at 2630 SE California Topeka, KS.

11. PO Oscar Rodriguez (Topeka PD), drove AHUMEDA's truck to 2630 SE California and parked it on the north end of the parking lot. PO Rodriguez parked the truck, took the keys, and disabled the battery, at the request of investigators, to ensure AHUMEDA's did not go anywhere with CORTES-Gomez. PO Rodriguez walked to TFO Kim Hanika's OGV to listen and translate the Spanish conversation between AHUMEDA's and CORTES-Gomez.

12. At approximately 8:15 p.m., a white Chrysler Aspen pulled up to the passenger side of AHUMEDA's vehicle. A Hispanic male, later identified as CORTES-Gomez, and a Hispanic female, later identified as Juanita Patricia GARCIA exited the SUV and met with AHUMEDA.

13. PO Rodriguez stated GARCIA and CORTES-Gomez made contact with AHUMEDA, and GARCIA asked AHUMEDA where "it" was. AHUMEDA told both GARCIA and CORTES-Gomez "it" was under the truck. (AGENT's note: This is the location of the original spare tire which contained Ex. 1, and the substitute spare tire placed by SA Kline and TT McMillan.)

14. CORTES-Gomez instructed AHUMEDA to retrieve the spare tire from the bottom of the AHUMEDA's truck, to which AHUMEDA complied, and began working on loosening it.

15. At approximately 8:30 p.m., it was decided to affect the arrest of CORTES-Gomez and GARCIA. All were taken into custody without incident and transported to the Topeka PD for processing. Both CORTES-Gomez and GARCIA were placed in interview rooms at the Topeka PD that were both audio and video recorded.

16. Several key co-conspirators were identified with the assistance of GARCIA.

17. GARCIA cooperated with DEA investigators and stated she had known CORTES-Gomez since 2012, and knew CORTES-Gomez had been selling methamphetamine in Topeka, Kansas. GARCIA stated CORTES-Gomez did not speak English and would utilize subjects as interpreters to deal with the methamphetamine customers in Topeka, KS who only spoke English.

18. GARCIA stated she has observed CORTES-Gomez instruct people, to include herself, to deliver multi-pounds of methamphetamine and pick up drug proceeds on more than 10 occasions.

19. Brenda SANDERS was a subject identified by GARCIA as a distributor of methamphetamine supplied by CORTES-Gomez. later arrested by DEA, and SANDERS

also provided information regarding CORTES-Gomez as a source of supply for the methamphetamine SANDERS was distributing in Topeka, Kansas.

20. SANDERS stated she had been sourced by CORTES-Gomez since 2012.

21. SANDERS stated CORTES-Gomez would supply SANDERS with 1-2 pounds of methamphetamine at a time.

22. SANDERS stated initially, CORTES-Gomez would bring a Hispanic male subject to interpret between CORTES-Gomez and SANDERS when deliveries of methamphetamine would occur.  SANDERS stated in late 2013 or early 2014 GARCIA began to accompany CORTES-Gomez on trips to Topeka, KS to oversee the delivery of the methamphetamine to SANDERS and the retrieval of drug proceeds.

23. SANDERS stated CORTES-Gomez was in-charge, but would instruct GARCIA or whoever was with CORTES-Gomez acting as the interpreter to either distribute the methamphetamine to SANDERS or collect the drug proceeds from "fronted" methamphetamine previously.

24.  James ROSS was also identified by GARCIA as a customer of CORTES-Gomez.  ROSS was arrested by DEA and provided information regarding CORTES-Gomez as a source of supply for the methamphetamine that ROSS distributed in Topeka, KS.

25. ROSS stated he met CORTES-Gomez through SANDERS in late 2014. ROSS stated initially he was supplied 1 pound of methamphetamine from CORTES-Gomez, but stated the number ballooned to as much as three pounds of methamphetamine per delivery supplied by CORTES-Gomez.

26. Robert WORTHINGTON was another subject identified by GARCIA. WORTHINGTON was arrested by DEA and provided information regarding CORTES-Gomez as the source of supply for the methamphetamine he was distributing in Topeka, KS.

27. WORTHINGTON stated he met CORTES-Gomez through a subject named Maria MARTINEZ in 2012. WORTHINGTON stated he would get 1-2 pounds of methamphetamine supplied by CORTES-Gomez on a regular basis since 2012.

28. Tara MORALES was also identified by GARCIA as a transporter of methamphetamine from either Dallas, TX or Phoenix. AZ to Topeka, KS to deliver to CORTES-Gomez.

29. MORALES was arrested and provided information that she had been delivering methamphetamine to CORTES-Gomez since 2012.

30. MORALES stated she also allowed CORTES-Gomez to utilize her bank accounts at Wells Fargo and Bank of America for the purpose of laundering drug proceeds.

The foregoing is true and correct to the best of my information and belief.

WHEREFORE, I respectfully request that an arrest warrant be issued authorizing the arrest of **MARCO ANTONIO CORTES-GOMEZ** for the aforementioned violations.

                s/ Christopher Kline
                Christopher Kline
                Special Agent, DEA

Sworn to before me and subscribed in my presence this 13th day of October, 2016, at Topeka, Kansas.

                s/ K. Gary Sebelius
                K. GARY SEBELIUS
                UNITED STATES MAGISTRATE JUDGE
                DISTRICT OF KANSAS